No. 19-35281

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KENT WILLIAMS,

*Plaintiff-Appellant*,

v.

GUARD FOX

*Defendant-Appellee.*

Appeal from the United States District Court
for the District of Idaho
No. 1:16-cv-00143-DCN
Hon. David C. Nye

APPELLEE'S ANSWERING BRIEF

**JAN M. BENNETTS**
ADA COUNTY PROSECUTING ATTORNEY
**SHERRY A. MORGAN**
**CATHERINE A. FREEMAN**
Deputy Prosecuting Attorneys
200 West Front Street, Room 3191
Boise, Idaho 83702
Telephone: (208) 287-7700
Facsimile: (208) 287-7719
Email: civilpafiles@adaweb.net

*Attorneys for Appellee*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

I.      STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................1

      A. Whether the District Court Correctly Granted Summary Judgment to Deputy Fox—and Denied Summary Judgment to Williams—on the Basis That Williams's Grievances Did Not Amount to Petitions for Redress and That Williams Failed to Establish His Claim for Retaliation ………..
      1

II.     ADDENDUM ..................................................................................1

III.    STATEMENT OF THE CASE .........................................................1

IV.    SUMMARY OF THE ARGUMENT................................................6

V.     STANDARD OF REVIEW...............................................................8

VI.    ARGUMENT....................................................................................9

      A. The District Court Correctly Granted Summary Judgment to Deputy Fox on the Petition for Redress Claim Because Williams's Grievances Were Frivolous and He Was Therefore Not Entitled to Petition for Redress. ..............................................................
      9

      B. The District Court Properly Granted Summary Judgment to Deputy Fox on Williams's Retaliation Claim Because Williams Failed to Establish All Five Required Factors ………………………….
      13

      C. As the District Court Correctly Held, Deputy Fox is Entitled to Qualified Immunity Because He Did Not Violate Williams's Clearly Established Right………………………………………………………
      22

VII.  CONCLUSION ...........................................................................25

STATEMENT OF RELATED CASES ...................................................................26

CERTIFICATE OF COMPLIANCE.....................................................................27

CERTIFICATE OF SERVICE ..............................................................................28

ADDENDUM ........................................................................................................30

# TABLE OF AUTHORITIES

**Cases Cited:**

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)……………………..  22

*Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)……………….  9-12,23,24,25

*Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)……………  19,23-25

*Butler v. San Diego Dist. Atty's Office,*
370 F.3d 956, 958 (9th Cir. 2004)…………………………………  8

*Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019)  23

*Evans v. Deacon*, 687 Fed.Appx. 589, 592 (9th Cir. 2017)………..  19

*Gibbs v. King*, 779 F.2d 1040 (5th 1986)…………………………..  20

*Hartman v. Moore*, 547 U.S. 250, 259 (2006)  14

*Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005)  10

*Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)……………  10

*Ivey v. Bd. Of Regents of the Univ. of Alaska,*
673 F.2d 266, 268 (9th Cir. 1982)…………………………………  8

*Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015)…………...  9,10

*Lewis v. Casey*, 518 U.S. 343, 353 (1996)…………………………  10

*Nevada Dep't of Corr. v. Greene,*
648 F.3d 1014, 1018 (9th Cir. 2011)………………………………  8

*Oswalt v. Resolute Indust., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011).  8

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)…………………...  22

*Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)………………..  15,17

*Procunier v. Martinez,* 416 U.S. 396, 407 (1974)…………………..  18

*Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005)…………... 14

*Richey v. Dahne*, 2016 WL 7337158, *2 (W.D. Wash. 2016)…….. 10-12,15,19, 20,24

*Scott v. Harris*, 550 U.S. 372, 380 (2007)…………………………. 8

*Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001)…………………… 9

*Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)…... 22

*Turner v. Safley*, 482 U.S. 78, 78-79 (1987)………………………. 18,19

*White v. Pauly*, 137 S.Ct. 548, 551 (2017)………………………… 23

**Statutes:**
42 U.S.C. § 1983………………………………………………….. 6,8

# I.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

**A.    Whether the District Court Correctly Granted Summary Judgment to Deputy Fox—and Denied Summary Judgment to Williams—on the Basis That Williams's Grievance Forms Did Not Amount to Petitions for Redress and That Williams Failed to Establish His Claim for Retaliation.**

## II.    ADDENDUM

Pursuant to Circuit Rule 28-2.7, Appellees include an Addendum bound with this brief.

## III.    STATEMENT OF THE CASE

Plaintiff Appellant Kent Williams ("Williams") currently seeks this Court's reversal of the following two district court decisions: (1) awarding summary judgment to Defendant/Appellee Landon Fox ("Deputy Fox") and (2) denial of summary judgment to Williams.

The allegations contained in Williams's Complaint (and now his Amended Complaint) arose out of his time as a pre-trial detainee in the Ada County Jail while he was prosecuted (and ultimately convicted) for multiple felony counts for committing armed bank robberies in Ada County, Idaho, in Case No. CR-2015-12724.[1] Williams alleges that Deputy Fox, an Ada County Sheriff's Office Deputy stationed in the Ada County Jail at the time, violated his first

---

[1] Williams was sentenced to life in prison with 32 years fixed. It appears that the lengthiness of his sentence was based, in part, on the fact that his Ada County robberies followed his completion of a lengthy incarceration in Washington state for first-degree murder for his involvement in an armed bank robbery that resulted in the death of a bank teller.

1

amendment rights in the way Deputy Fox handled three of Williams's inmate grievance forms.

At the time of Williams's allegations, the Ada County Jail Inmate Handbook (the "Inmate Handbook")—which was supplied to inmates—provided procedures allowing inmates to submit grievances to jail staff. (SER 80 at ¶ 12, SER 88-89). The Inmate Handbook directs inmates to "speak with jail staff regarding concerns that [the inmate] may have." (SER 88). If the inmate is "still not satisfied," he or she may submit a grievance form; the form "gives [the inmate] an opportunity to resolve a complaint directly with the staff member involved." *Id*. The Inmate Handbook also contains procedures for inmates to appeal staff's response to any particular grievance to the on-shift supervisor. (SER 88-89).

In addition, the Inmate Handbook states that "[o]nce [a grievance] has been answered and appealed (if appropriate), repeatedly grieving the same issue constitutes an abuse of the. . . grievance process and can result in disciplinary action." (SER 89).

It appears that Williams may have been developing a plan to create a First Amendment lawsuit during his time at the Ada County Jail. In a non-privileged communication dated January 10, 2016, Williams asked an acquaintance, Elaine Smith, to seek legal advice from an unnamed third party on the best way to manufacture a violation of the First Amendment associated with use of the jail grievance system. (SER 91 at ¶ 3, SER 93-95). In the letter, Williams stated that he

had been "infracted" for calling jail staff names (such as "moronic" and "mentally handicapped") in his grievances, stating, "It's no biggie if I get infracted since there's no real difference in discipline or the 'living unit' for max inmates. I just don't want to waste my time if it's not winnable so I can successfully sue." (SER 91 at ¶ 3, SER 94).

In a subsequent letter to Smith on March 13, 2016, Williams explained that "all day long I'm writing the most vial [sic] things in grievances. Go F yourself & stick this in your asses nice version for mixed company." (SER 91 at ¶ 3, SER 96-104). Williams went on to recount his efforts to manufacture a lawsuit by continually filing grievances and then stated, "Good lord why didn't this easy of a windfall land in my lap during the last 21 years I did? Well small consolation but at least I should be sitting fat, $, for this next long stretch." (SER 91 at ¶ 4, SER 104). Williams also indicated in his first letter that he suspected his actions would be rewarded with a "hundred grand pay out [sic]." (SER 91 at ¶ 3, SER 95).

On January 11, 2016, only a single day after Williams sent the first of the two above letters to Smith, Williams slid a grievance form under his cell door ("Grievance Form No. 1"). (SER 35 at ¶ 4, SER 69 at ¶ 6). Though neither Williams nor the Ada County Jail retained a copy of the document, Williams claims Grievance Form No. 1 "contained a complaint against a guard who had refused to accept [an earlier] grievance" on the basis that it contained "disrespectful language." (SER 35 at ¶ 5). The earlier, substantive grievance—to

the extent there was one—is not a subject of this lawsuit, and Williams has not set forth its contents in the record.

Deputy Fox picked up Grievance Form No. 1 and read it to determine the proper course of action. (SER 69 at ¶ 6). Upon reading it, Deputy Fox determined that Williams was using the Form to launch disrespectful insults at jail staff, not to grieve an actual issue. (SER 69 at ¶ 7). Therefore, Deputy Fox refused to process it and returned Grievance Form No. 1 to Williams. *Id*. Williams alleges that Deputy Fox warned disciplinary action against Williams if he continued to use disrespectful language in grievances. (SER 36 at ¶ 6). Deputy Fox states that he warned Williams with potential disciplinary action because Grievance Form No. 1 did not grieve an actual issue and because Williams was using the Form merely to launch insults at jail staff. (SER 69 at ¶¶ 7-9). Williams slid Grievance Form No. 1 back under his door, and Deputy Fox left it there. (SER 69 at ¶ 10) Williams did not appeal Deputy Fox's response to Grievance Form No. 1.

Later that day, Williams slid a second grievance form under his door ("Grievance Form No. 2"). (SER 36 at ¶ 9). Again, neither Williams nor the Ada County Jail retained a copy. Williams claims that Grievance Form No. 2 complained about Deputy Fox's "refus[al] to accept and process [Grievance Form No. 1]." *Id*. Deputy Fox contends that like the one before it, Grievance Form No. 2 failed to grieve an issue, and merely launched insults at jail staff. (SER 70 at ¶ 12). Deputy Fox informed Williams that Grievance Form No. 2 would not be processed

as a grievance, and placed it on the floor outside Williams's cell, next to the earlier one. (SER 70 at ¶ 15). Deputy Fox again informed Williams that his abuse of the grievance system violated the inmate code of conduct. (SER 70 at ¶ 13). Williams did not appeal Deputy Fox's response to Grievance Form No. 2.

The next day, January 12, 2016, Williams set out a third grievance form ("Grievance Form No. 3"). (SER 37-38 at ¶ 13). Grievance Form No. 3 stated as follows:

> THE DECISION/ACTION THAT I AM GRIEVING IS: of guard fox to throw away my outgoing mail. On 1/11/16 I put a grievance out my cell door for 7PM mail pick up. Fox took it, read it and refused to take it. It was left on the tier. At 7:15, 1/11/16, I then put out the cell door a grievance grieving fox refusing to take and process my mail (courts consider grievance legal mail). He took it, read it and said, "first chance I get at your neck. . ." and then tossed it in the air onto the tier where it was prosumably [sic] thrown away.

SER 42. Deputy Fox responded as follows:

> The grievances you have been submitting are not acceptable. You are not grieving any issues, you are making statements and calling deputies names and being disrespectful. You have already been written up for this issue.[2] Do not continue to abuse the grievance system.
>
> You say that I said, "First chance I get at your neck[."] I never said any such thing. Please stop making false accusations.

*Id*. Williams appealed Deputy Fox's response to Grievance Form No. 3. *Id*. On January 13, 2016 at 1:44 a.m., Deputy Fox's response to Grievance Form No. 3

---

[2] Even before Williams filed Grievance Form No. 1, he had previously submitted multiple grievances on a single issue. (SER 45-46). At that time, Ada County Jail staff had instructed Williams "not [to] submit multiple grievances on the same issue," or else he might "receive formal discipline." *Id*.

5

was reviewed on appeal by the on-shift supervisor, who supported Deputy Fox's response. *Id.*

Deputy Fox never initiated any disciplinary action against Williams for the above events, nor did Williams receive any formal or informal discipline or punishment for the above. (SER 71 at ¶ 22).

Williams filed the instant action against Deputy Fox on April 14, 2016. The district court allowed Williams to proceed on two types of First Amendment claims under 42 U.S.C. § 1983: (1) the right to petition the government for redress and (2) The right to be free from retaliation for the exercise of his constitutional rights. (*See* SER 47-67).

Both parties filed motions for summary judgment. (*See* SER 116-17). The district court denied Williams's motion in a Memorandum Decision and Order dated September 28, 2018 (SER 1-12) and granted Deputy Fox's motion in a Memorandum Decision and Order dated March 26, 2019. (SER 13-31). Williams now appeals those determinations.

## IV.   SUMMARY OF THE ARGUMENT

The district court properly granted summary judgment to Deputy Fox, and properly denied it to Williams, on both Williams's petition for redress and his retaliation claims.

Williams's petition claim cannot survive because each of his three Grievance Forms was frivolous. Even assuming the truth of Williams's

contentions, the record shows that all three complained about the Ada County Sheriff's Office's handling of earlier grievances. In other words, all three Grievance Forms were frivolous attempts to circumvent the proper grievance appeal procedure and to re-grieve issues that had already been addressed. Because of this, none of them are entitled to protection as petitions for redress.

Williams's retaliation claim also fails. He contends that Deputy Fox retaliated against him by issuing a warning to Williams for submitting a grievance containing disrespectful language. However, even if Williams's Grievance Forms were non-frivolous, Williams cannot establish causation because Williams's Grievance Forms violated jail policy in a manner unrelated to his language choice. Thus, Williams would have received the same warning even if his grievances had not contained disrespectful language. Further still, Deputy Fox's actions advanced a legitimate penological interest.

Lastly, Deputy Fox is entitled to qualified immunity for both claims. It is not clearly established that an inmate's right to petition attaches to a frivolous grievance, or that an inmate has a right to be free from retaliation for submitting disrespectful correspondence to jail staff outside the petition context.

## V.    STANDARD OF REVIEW

This Court reviews a district court's ruling on summary judgment de novo. *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). In other words, the Court is to "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Oswalt v. Resolute Indust., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011) (citations omitted).

In the context of a § 1983 action, a plaintiff must also do more than make conclusory allegations to defeat summary judgment. *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "A correct statement of the law is that when a defendant makes a properly supported summary judgment based on official immunity, the plaintiff has an obligation to produce evidence of his or her own." *Butler v. San Diego Dist. Atty's Office*, 370 F.3d 956, 958 (9th Cir. 2004). A plaintiff may not simply rest upon the allegations contained in his complaint, but rather, must provide evidence for the court's consideration. *Id*. at 963. Likewise, if a plaintiff's version of the events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## VI. ARGUMENT

**A.** **The District Court Correctly Granted Summary Judgment to Deputy Fox on the Petition for Redress Claim Because Williams's Grievances Were Frivolous and He Was Therefore Not Entitled to Petition for Redress.**

The district court properly granted summary judgment to Deputy Fox on Williams's petition for redress claim. Even assuming that Williams's version of events is correct, Deputy Fox—not Williams—is entitled to summary judgment as a matter of law. This Court has ruled on many occasions that the right to petition for redress attaches to inmate grievances, even ones containing disrespectful language. However, the right does *not* attach to grievances that are frivolous. Williams's three Grievance Forms are mere attempts to circumvent the proper grievance appeal procedure and to re-grieve issues that were already addressed by Ada County Jail staff. Because of this, the Grievance Forms are frivolous, and Williams had no right to petition for redress.

The First Amendment to the United States Constitution protects inmates' right to participate in a jail grievance process if one exists. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). However, as the district court aptly noted, such protection is not absolute; frivolous grievances do not qualify as petitions for redress, and are therefore not entitled to First Amendment protection. (SER 20), *see also Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) ("Prisoners'

grievances, *unless frivolous*, concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment." (quoting *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000))) (emphasis added)). In *Herron*, the Sixth Circuit ruled that the right to petition is only protected if grievances are not frivolous because "[d]epriving someone of a frivolous claim. . . deprives him of nothing at all. . ." 203 F.3d at 415 (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

The district court here correctly reasoned that "[a]lthough disrespectful statements in grievances may receive First Amendment protections . . . , Williams cannot show that his grievances qualified as petitions for redress in the first instance." (SER 21) (citing *Jones*, 791 F.3d 1023, 1035, *Bradley*, 64 F.3d at 1279). As detailed further below, Williams's three Grievance Forms do not contain grievable issues.

This Court has ruled that the right to petition protects an inmate's non-frivolous grievance, even if it contains disrespectful language. However, in each of those cases, the grievance at issue contained both disrespectful language *and* a non-frivolous, substantive, grievable issue. In juxtaposition, Williams's Grievance Forms did not.

For example, in *Richey*, this Court ruled that a prison guard violated an inmate's rights by rejecting his grievance that alleged that he had "been subject to

abusive treatment from [an] unprofessional obese guard" and that the guard "denied [him] of [his] right to yard and to a shower." *See Richey v. Dahne*, 2016 WL 7337158, *2 (W.D. Wash. 2016) (unreported), *Richey*, 733 Fed.Appx. at 883-84. Though the grievance contained disrespectful language, it also included substantive claims of abuse. This Court ruled that the grievance was therefore entitled to protection. *See id*.

Similarly, the prisoner in *Bradley* submitted a grievance containing both disrespectful language and non-frivolous grievances. *Bradley*, 64 F.3d at 1278. The grievance alleged that a prison guard had inappropriately failed to retrieve the inmate for his law library call-out, and stated that the guard's "actions show her misuse of her authority and her psychological disorder needs attention." *Id*. Again, the grievance contained both disrespectful language *and* a non-frivolous grievance, and again, this Court ruled that the inmate was entitled to petition for redress. *Id*.

Here, the district court properly determined that Williams's Grievance Forms were *frivolous*, and therefore did not implicate Williams's right to petition for redress. Williams submitted three Grievance Forms to Deputy Fox. Williams alleges that Deputy Fox violated his right to petition by refusing to process Grievance Form Nos. 1 and 2 (Grievance No. 3 was processed). Neither party retained a copy of the first two, but even in Williams's own version of events, Grievance Form No. 1 complained about "a guard who had refused to accept [an earlier] grievance," and the second complained about Deputy Fox's "refus[al] to

accept and process" the first. (SER 35 at ¶ 6, SER 36 at ¶ 9). Likewise, Grievance Form No. 3, which is contained in the record, complains about Deputy Fox's handling of Grievance Form Nos. 1 and 2. (SER 42). Unlike the actual grievances in *Richey* and *Bradley*, neither Grievance Form No. 1 nor No. 2 contained a non-frivolous, substantive, grievable issue. Instead, each was a frivolous attempt to re-grieve issues that had, presumably, already been addressed by the Ada County Jail.

Further, the Inmate Handbook in effect at the time set forth a grievance appeal procedure, and stated that "[o]nce [a grievance] has been answered and appealed (if appropriate), repeatedly grieving the same issue constitutes an abuse of the. . . grievance process and can result in disciplinary action." (SER 80 at ¶ 12, SER 88-89). Williams kept submitting additional Grievance Forms regarding the same complaint, in direct contradiction of both the Inmate Handbook and prior direction he had received from jail staff to "not submit multiple grievances on the same issue." (SER 80 at ¶ 12, SER 88-89, SER 45-46). Unlike the inmates in *Richey* and *Bradley*, Williams failed to set forth any viable complaint triggering the right to petition for redress. On that basis, the district court properly found that Williams's "grievances were nothing more than frivolous attempts to re-grieve an issue [the Ada County Jail] had already addressed." (SER 22).

Williams's letters to Elaine Smith further highlight the frivolous nature of his grievances. As noted above, while incarcerated at the Ada County Jail,

Williams wrote to Ms. Smith on multiple occasions eliciting her assistance in contriving a First Amendment case against the Ada County Sheriff's Office. (SER 91 at ¶¶ 3-4, SER 93-104). On March 13, 2016, he wrote that "all day long I'm writing the most vial [sic] things in grievances. Go F yourself & stick this in your asses nice version for mixed company." (SER 91 at ¶ 4, SER 102). He stated that "[i]t's no biggie if I get infracted. . . I just don't want to waste my time if it's not winnable so I can successfully sue." (SER 91 at ¶ 3, SER 94). Williams's purpose in filing the three grievances is clear in his letters—"Good lord why didn't this easy of a windfall land in my lap during the last 21 years I did? Well small consolation but at least I should be sitting fat, $, for this next long stretch." (SER 91 at ¶ 4, SER 104).

Based on the above, the district court correctly determined that Williams's Grievance Forms were frivolous, and therefore did "not qualify as petitions for redress protected by the First Amendment." (SER 22). In turn, the district court properly granted summary judgment to Deputy Fox on Williams's right to petition claim.

**B. The District Court Properly Granted Summary Judgment to Deputy Fox on Williams's Retaliation Claim Because Williams Failed to Establish All Five Required Factors.**

Likewise, the district court properly granted Deputy Fox summary judgment on Williams's retaliation claim. To establish a claim of First Amendment retaliation in the prison context, a plaintiff must prove five factors: (1) "that a state

actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. Williams must establish *all five factors*, or his retaliation claim fails. He has not met this burden. The uncontroverted evidence shows that Deputy Fox had an independent reason to warn Williams about potential discipline. Furthermore, Deputy Fox's actions in this case furthered important, legitimate correctional goals.

1. Causation

Williams cannot establish causation in order to survive summary judgment because Deputy Fox would have warned Williams that he may face discipline if he continues to abuse the jail grievance system, regardless of whether the Grievance Forms at issue contained disrespectful language.

To establish a valid retaliation claim, a plaintiff "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Additionally, retaliation must be the but-for cause of the alleged adverse action. *Id*. at 260. In other words, a retaliation claim fails if the alleged adverse action would have taken place even without the plaintiff's protected conduct. *Id*. Furthermore, the district court properly noted that "[w]hen analyzing a jail official's proffered reasons for allegedly retaliatory conduct, the Court must 'afford appropriate deference and

14

flexibility' to that official." (SER 23) (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

As highlighted in the preceding section, Williams did not engage in protected conduct, since his Grievance Forms were frivolous and contained no actual complaint. However, even if he had, he still cannot establish the causal nexus required for a retaliation claim. Williams contends that Deputy Fox retaliated against him when he warned Williams about potential disciplinary action following Williams's submission of Grievance Form Nos. 1 and 3. (SER 36 at ¶ 6, SER 37-38 at ¶ 13).[3] However, the uncontroverted evidence shows that Fox had an unrelated, independent reason to consider discipline—Williams's Grievance Forms violated jail policy.

Williams claims Deputy Fox considered disciplinary action for Williams's use of disrespectful language in his Grievance Forms. That said, he has not refuted Deputy Fox's clarifying testimony that he considered such action not only for harassing deputies, *but also* for continually filing frivolous Grievance Forms in violation of jail policy. The Inmate Handbook in effect at the relevant time set forth grievance procedures. (SER 80 at ¶ 12, SER 88-89). According to those procedures, if an inmate was unsatisfied with jail staff's response to any particular

---

[3] Williams also alleges that Deputy Fox retaliated against him by failing to process Grievance Form Nos. 1 and 2. (SER 20 at ¶ 20). However, this Court has noted that "[n]either [this Court's] prior case law nor that of the Supreme Court has clearly established that merely refusing to accept a grievance for processing is a retaliatory adverse action." *Richey*, 733 Fed.Appx. at 884.

grievance, he or she could appeal such determination. (SER 80 at ¶ 12, SER 88). In addition, the Inmate Handbook prohibited inmates from "repeatedly grieving the same issue," and noted that doing so "constitutes an abuse of the. . . grievance process and can result in disciplinary action." (SER 80 at ¶ 12, SER 89).

Williams had violated the above provisions, and had been warned against doing so, even prior to the events at issue. Ada County Jail staff had previously advised Williams that he would face potential disciplinary action if he continued to repeatedly grieve a single issue. (SER 45-46). Specifically, jail staff instructed Williams "not [to] submit multiple grievances on the same issue," or else he might "receive formal discipline." *Id.*

According to Williams in his Amended Complaint, Deputy Fox issued two warnings to him. After Grievance Form No. 1, Williams alleges that Deputy Fox "threatened to issue me a disciplinary report if I continue to use 'disrespectful' language in grievances." (SER 36 at ¶ 6). Deputy Fox agrees that he warned Williams, but clarified that he did so because Williams had, again, filed a grievance that failed to grieve an actual issue *and* because Williams merely used the grievance form to launch insults at jail staff. (SER 69 at ¶¶ 7-9). Williams has not disputed Deputy Fox's clarification. Deputy Fox also warned Williams following Williams's submission of Grievance Form No. 3. (SER 42). The written warning read, in pertinent part:

The grievances you have been submitting are not acceptable. You are not grieving any issues, you are making statements and calling deputies names and being disrespectful. You have already been written up for this issue. Do not continue to abuse the grievance system.

*Id*. Deputy Fox warned Williams because Williams was continually abusing the grievance system by filing frivolous grievances.

The uncontroverted evidence shows that Deputy Fox would have warned Williams about potential discipline, even if the grievances had not contained disrespectful language. Williams had received a prior warning for repeatedly filing empty, repetitive grievances in violation of the Inmate Handbook. Williams's Grievance Forms at hand were also empty, repetitive grievances. Because Williams cannot establish causation for his retaliation claim, it fails.

2. Legitimate Correctional Goal

Even if Williams had engaged in protected conduct, and even if he could establish causation, his retaliation claim still fails. Williams cannot prove that Deputy Fox's actions failed to advance a legitimate penological goal. To prevail on a claim of retaliation, an inmate must prove that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citations omitted). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Id*. As the district court held, Williams cannot.

17

As noted by the United States Supreme Court, even if a prison regulates inmates' First Amendment rights, such regulation is still valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In so ruling, the Supreme Court highlighted the importance of relying on prison officials' judgment:

> Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration."

*Id*. (quoting *Procunier v. Martinez,* 416 U.S. 396, 407 (1974).

To that end, the Supreme Court established a four-factor test to aid courts in determining whether a government's restriction on inmates' speech is constitutional: (1) "whether there is a 'valid, rational connection'" between the restriction and "the legitimate governmental interests put forward to justify it"; (2) "whether there are alternative means of exercising the asserted constitutional right that remain open to inmates"; (3) "whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources"; and (4) "whether the regulation

represents an 'exaggerated response' to prison concerns." *Turner v. Safley*, 482 U.S. 78, 78-79 (1987).

In *Brodheim*, this Court determined that the prohibition of "disrespectful language do[es] not serve a legitimate penological interest *in the special context of prison grievances.*" *Richey*, 733 Fed.Appx. at 883 (emphasis added), *see also Brodheim*, 584 F.3d at 1273. This Court has clarified the limited nature of that ruling:

> [T]he holding of *Brodheim* relates only to the narrow category of cases dealing with prison grievances. Nothing about *Brodheim* or our holding today should be construed as suggesting that prisoners have a right to publicly use disrespectful language in the broader prison environment. Such actions would plausibly raise legitimate penological concerns related to the security of guards and the desirability of maintaining harmonious relationships between guards and prisoners to the extent possible. Hence prisons will often be justified in curtailing that sort of public disrespectful behavior outside of the prison grievance process.

*Richey*, 733 Fed.Appx. at 884, *see also Evans v. Deacon*, 687 Fed.Appx. 589, 592 (9th Cir. 2017) ("[P]rohibiting disrespectful language in a prisoner's written grievance does not reasonably advance a legitimate correctional goal, at least when the grievance is sent to someone other than the guard toward whom the prisoner exhibits disrespect.").

Given the narrow holding in *Brodheim*, it appears that this Court intended to limit the protection of disrespectful language in this context *only* to non-frivolous grievances. The Fifth Circuit has directly addressed this question, and ruled that

outside the context of petitions for redress, prisons have a legitimate penological interest in prohibiting disrespectful language in verbal or written communications from inmate to guard. *Gibbs v. King*, 779 F.2d 1040 (5th 1986), *cert denied*, 476 U.S. 1117 (1986). In *Gibbs*, the court stated that the purpose of doing so is "to prevent the escalation of tension that can arise from gratuitous exchanges between inmates and to enable employees to maintain order without suffering [verbal or written] challenges to their authority." *Id.* at 1045. The Fifth Circuit's ruling in *Gibbs* falls right in line with this Court's determination in *Richey* that prohibiting "disrespectful language in the broader prison environment. . . would plausibly raise legitimate penological concerns," including guard security and "maintaining harmonious relationships between guards and prisoners to the extent possible." *Richey*, 733 Fed.Appx. at 884.

The Ada County Jail has a legitimate penological interest in prohibiting vitriol between inmates and guards. Petitions for redress—and even the disrespectful language contained within them—are afforded constitutional protection. Disrespectful correspondence from inmates to jail staff does not, since it serves no purpose other than to harass. Requiring jail staff to accommodate inmates' disrespectful statements in this manner would waste prison resources, frustrate jail staff's ability to do their jobs, and increase tension amongst inmates and jail staff, which, in turn, would decrease jail security.

Inmates at the Ada County Jail have numerous, alternative forms of exercising their First Amendment rights. Most importantly, they enjoy their protected right to petition by filing non-frivolous grievances—even ones containing disrespectful language directed toward jail staff.

Deputy Fox's actions here advanced the legitimate goals of the Ada County Jail. Williams was constantly filing frivolous grievances, ignoring both the proper appeal procedure and jail's prohibition of repeatedly grieving the same issue. Furthermore, such a restriction did not leave Williams without other methods of communication. Because Williams has failed to establish that Deputy Fox's actions did not advance legitimate penological goals, his claim fails.

3. Conclusion

Williams's claim cannot survive summary judgment, and the district court ruled appropriately. Deputy Fox would have acted the same, regardless of whether Williams's Grievance Forms contained disrespectful language because each otherwise violated jail policy. Furthermore, even if Williams could establish causation, Deputy Fox's actions advanced legitimate penological goals. Williams has failed to establish all five factors required for a retaliation claim. Therefore, the district court properly granted summary judgment to Deputy Fox.

**C.** **As the District Court Correctly Held, Deputy Fox is Entitled to Qualified Immunity Because He Did Not Violate Williams's Clearly Established Right.**

Qualified immunity also protects Deputy Fox from both of Williams's claims. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. Qualified immunity allows government employees "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

In order to defeat a claim of qualified immunity, a plaintiff must "(1) . . . show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his or her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

As detailed in the two preceding sections, Deputy Fox neither violated Williams's constitutional right to petition nor his right to be free from retaliation for engaging in protected conduct. On that basis alone, Deputy Fox is entitled to summary judgment.

Furthermore, Williams has failed to establish his rights were clearly established in support of either claim. For a right to be clearly established, case law must have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. *White v. Pauly*, 137 S.Ct. 548, 551 (2017), *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019).

Williams cites only two cases in support of his contention that his two claims were clearly established: *Bradley* and *Brodheim*. Both cases are distinct from the facts at hand because both involved the suppression of speech contained within legitimate, non-frivolous grievances.

In *Brodheim*, a prisoner filed a grievance in response to his allegation that a prison guard chastised him for breaking a rule—Brodheim did not believe he had broken a rule, and he alleged that the guard was "contemptuous and discourteous" toward him. 584 F.3d at 1265. Brodheim's grievance sought clarification on the rule he had violated. *Id*. Prison staff warned Brodheim against using disrespectful language in his grievances. *Id*. Since *Brodheim*, as referenced above, this Court has clarified that the holding only applies to disrespectful language in the narrow

context of prison grievances. *Richey*, 733 Fed.Appx. 881, 883 (emphasis added). Similarly, the inmate in *Bradley* submitted a grievance containing both disrespectful language and legitimate grievances. *Bradley*, 64 F.3d at 1278. The grievance alleged that a prison guard had inappropriately failed to retrieve the inmate for his law library call-out, and stated that the guard's "actions show her misuse of her authority and her psychological disorder needs attention." *Id*. In both *Brodheim* and *Bradley*, both plaintiffs had filed a grievance that contained grievable, non-frivolous complaints. In both cases, the Court ruled that a legitimate grievance could not be ignored on the basis that it contained disrespectful language.

The holdings in *Bradley* and *Brodheim* did not clearly establish Williams's claimed rights in this case. As addressed above, Williams's Grievance Forms were grievances only in form—not in substance. Unlike the plaintiffs in *Brodheim* and *Bradley*, Williams's Grievance Forms did not contain a substantive, non-frivolous grievance. Instead, Williams merely attempted to re-grieve issues that had already been addressed. In the confines of this case, it is unclear what Williams was grieving in the first place. It is not clearly established that an inmate's right to petition attaches to a frivolous grievance, or that an inmate has a right to be free from disciplinary warnings for submitting disrespectful correspondence to jail staff outside the petition context.

Further, the guards in *Bradley* and *Brodheim* had no reason apart from disrespectful language to deny the plaintiffs' grievances or to warrant discipline. In juxtaposition, Deputy Fox did have an independent reason for denying Williams's grievances and for warning Williams that he may face discipline if he continued to abuse the grievance system. Williams was abusing the grievance process by continually re-filing issues that had already been addressed—such actions were subject to discipline under the Inmate Handbook.

Because Deputy Fox did not violate Williams's constitutional rights, and because Williams's alleged rights were not clearly established, Deputy Fox is entitled to qualified immunity on both of Williams's claims.

## VII.   CONCLUSION

Williams's claims cannot survive summary judgment, and the district court properly dismissed both. Not only did Williams fail to establish that his right to petition and right to be free from retaliation, but even further, Deputy Fox is entitled to qualified immunity on both.

DATED this 2nd day of July, 2019.

**JAN M. BENNETTS**
Ada County Prosecuting Attorney


By:   /s/ Catherine A. Freeman
Catherine A. Freeman
Deputy Prosecuting Attorney

## STATEMENT OF RELATED CASES

Counsel for Appellees is unaware of any related cases pending in the Ninth Circuit.

DATED this 2nd day of July, 2019.

**JAN M. BENNETTS**
Ada County Prosecuting Attorney

By:     s/Catherine A. Freeman
Catherine A. Freeman
Deputy Prosecuting Attorney

*Attorney for Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,041 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

DATED this 2nd day of July, 2019.

JAN M. BENNETTS
Ada County Prosecuting Attorney


By:    s/Catherine A. Freeman          
Catherine A. Freeman
Deputy Prosecuting Attorney

*Attorney for Appellees*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participant in the manner indicated as follows:

Kent Williams, #119473                    _____ Hand Delivery
I.S.C.C.                                              X    U.S. Mail
P.O. Box 70010                                _____ Electronic Mail
Boise, Idaho 83707

DATED this 2nd day of July, 2019.


By: /s/Candace McCall_____
Candace McCall

28

# ADDENDUM OF STATUES AND RULES

**Statues:**

42 U.S.C. § 1983

**42 U.S.C. § 1983**

## § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.